

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

TOPPING ESTATES, CAREY MULLEN,      )      No. ED111623
ERIC DANKER, AND CARTER OLDFIELD, )
     )      Appeal from the Circuit Court
     Appellants,      )      of St. Louis County
     )
vs.      )      Honorable Matthew H. Hearne
     )
THE SPALITTO LIVING TRUST, PETER J.    )
SPALITTO, AND SUSAN V. SPALITTO,      )
     )
     Respondents.      )      FILED: November 28, 2023

### Introduction

Topping Estates, a subdivision association, through and with its alleged trustees, Carey Mullen, Eric Danker, and Carter Oldfield, (collectively, "Appellants") appeal from the circuit court's amended order and judgment granting partial summary judgment in favor of the Spalitto Living Trust, Peter J. Spalitto, and Susan V. Spalitto (collectively "the Spalittos") and denying partial summary judgment to Appellants. The order found that Topping Estates' indentures were expired, void, or invalid, and thus had no restricting effect on the Spalittos, who owned a lot in Topping Estates. Although the Spalittos' amended counterclaims remained pending, the circuit court declared there was no just reason for delaying an appeal of the order, and it certified the

order as final for purposes of appeal pursuant to Rule 74.01(b).[1] Appellants raise five points on appeal.[2]

Because the judgment appealed from in this case is neither a "final judgment" in the sense that it resolves all claims against all parties, nor a "final judgment" eligible for certification as "final" under Rule 74.01(b) because it disposes of a "judicial unit" of claims, it is not a "final judgment" as required under Section 512.020(5).[3] Wilson v. City of St. Louis, 600 S.W.3d 763, 765 (Mo. banc 2020). Accordingly, we lack jurisdiction and must dismiss the appeal.

Factual and Procedural History

We address only those facts necessary to our analysis of whether we have jurisdiction to review the appeal.

Topping Estates represents a subdivision located in the municipality of Town and Country within St. Louis County. First platted in 1956 as an eight-lot subdivision, within the course of one year the subdivision grew to forty-four lots, including the lot at issue in this action. The original owners established a set of indentures (the "Indentures") setting forth various restrictions on the property owners. The Indentures included a sunset clause providing for the expiration of restrictions in 2010, unless otherwise extended. The Indentures also set forth two methods for amending its terms:

> All or any of the foregoing provisions or restrictions may be modified, amended, released or extinguished at any time by written instrument executed, acknowledged

---

[1] All Rule references are to Mo. R. Civ. P. (2023).
[2] In Point One, Appellants argue the circuit court erred in granting partial summary judgment to the Spalittos and denying partial summary judgment to Appellants because the 1993 amendments to the indentures were validly enacted and binding on the Spalittos. Similarly, in Point Two, Appellants maintain the circuit court erred in granting partial summary judgment to the Spalittos and denying summary judgment to Appellants because the 1997 amendments to the indentures were validly enacted and binding. Point Three contends that the circuit court erred in granting partial summary judgment to the Spalittos because the 1993 and/or 1997 amendments apply to the Spalittos' lot. In Point Four, Appellants claim the circuit court erred in finding a setback requirement unenforceable. Appellants argue in Point Five that granting partial summary judgment in favor of the Spalittos was improper because the Spalittos failed to name all lot-owners, who Appellants allege are necessary parties, in their claim for declaratory relief.
[3] All Section references are to RSMo (2016).

and recorded, as required by law, for instruments affecting real estate, by the owners of a majority in number of lots as per plat of said "TOPPING ESTATES" except as otherwise provided in this instrument. The Trustees above, however, are given the right to amend, alter, extinguish, modify or add to these restrictions, if such be required to comply with the rules of the Federal Housing Authority, Veterans Administration or any other Governmental Agency or law, either Federal, State or Local.

Two efforts to amend the Indentures followed, first in 1993 and again in 1997. In relevant part, the amendments removed the 2010 sunset clause and provided that the Indentures would automatically renew every twenty-five years. The amendments also established procedures to acquire trustee approval for certain architectural changes. The Indentures and the amendments included a fifty-foot setback requirement for any structures (the "Build-line").

The Spalittos purchased Lot 29 (the "Lot") in 2019 and began construction on their new home in 2020. Appellants allege the construction violated numerous Indentures, contending the Spalittos did not seek approval before beginning construction or changing the Lot's grade and did not submit a required deposit to the trustees. Appellants further allege that the construction extends over the Build-line. The Spalittos counter that neither the Indentures nor the 1993 or 1997 amendments are valid and enforceable. As to the Build-line, the Spalittos do not dispute that the home extends beyond the line but challenge the enforceability of the Build-line.

In August 2020, Appellants filed a one-count petition against the Spalittos alleging that the Spalittos' construction violated numerous restrictions in the Indentures. Appellants sought to enforce the Indentures, enjoin construction on the Lot, collect money damages for unpaid general and special assessments, and recover attorneys' fees. Appellants also filed with the St. Louis County Recorder of Deeds a notice of violation of the Indentures and a notice of *lis pendens* stating an action against the Spalittos was pending in the circuit court regarding their construction's non-compliance with the Indentures. The Spalittos responded by filing an

3

amended seven-count counterclaim against Appellants (the "Amended Counterclaims"). In Count I of the Amended Counterclaims, the Spalittos sought: (a) declaratory relief that neither the Indentures nor the Build-line affects their Lot; (b) declaratory relief that the named trustees are not valid trustees of Topping Estates; (c) declaratory relief that Appellants are not entitled to indemnity from the subdivision's lot owners; (d) attorneys' fees and money damages; and (e) any other relief the circuit court deemed just. The Amended Counterclaims also alleged slander of title (Count II), abuse of process (Count III), specific performance (Count IV), breach of fiduciary duty (Counts V and VI), and prima facie tort (Count VII).

The parties cross-moved for partial summary judgment. After briefing their motions and oppositions, the parties argued their positions at a hearing before the circuit court. The circuit court issued an order and judgment in December 2022 (the "December 2022 Judgment") granting partial summary judgment in favor of the Spalittos "on the entirety of [Appellants'] petition." The December 2022 Judgment noted that the Spalittos' Amended Counterclaims "remain[ed] pending." The circuit court made the following findings in support of its summary-judgment ruling: (1) the Indentures expired in 2010 and do not restrict the subdivision, including the Spalittos' Lot; (2) the 1993 amendments were not validly enacted and are void; (3) the 1997 amendments were not validly enacted and are void; and (4) the Build-line is unenforceable.

Appellants moved the circuit court to reconsider the December 2022 Judgment and to certify it as a final judgment for purposes of appeal under Rule 74.01(b). The circuit court denied the motion to reconsider but granted the request to certify the December 2022 Judgment. In March 2023, the circuit court entered an order and judgment (the "March 2023 Judgment"), which incorporated all findings and conclusions from the December 2022 Judgment, found there

4

was no just reason for delay of appeal, and certified the order as a final judgment for purposes of appeal pursuant to Rule 74.01(b). Appellants appeal from the March 2023 Judgment.

This Court issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. Appellants submitted a response to the order, and we took the matter of jurisdiction with the case.

## Jurisdiction

Before reaching the merits, this Court has a duty to determine whether it has jurisdiction to hear the appeal. Wilson, 600 S.W.3d at 765. If we lack jurisdiction, the appeal must be dismissed. Energy Mkt. 709, LLC v. City of Chesterfield, 614 S.W.3d 643, 647 (Mo. App. E.D. 2020).

"The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." Wilson, 600 S.W.3d at 767 (internal quotation omitted). The Missouri legislature has granted a right to appeal only "final judgments." Section 512.020(5); see also Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997) (internal quotation omitted) ("A prerequisite to appellate review is that there be a final judgment."). "[A] judgment is a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." State ex. rel. Henderson v. Asel, 566 S.W.3d 596, 598 (Mo. banc 2019). A judgment becomes "final," and thus appealable under Section 512.020(5), when it disposes of all claims (or the last pending claim) in a suit, leaving nothing for future determination. Jefferson Cnty. 9-1-1 Dispatch v. Plaggenberg, 645 S.W.3d 473, 475 (Mo. banc 2022); Ndegwa v. KSSO, LLC, 371 S.W.3d 798, 801 (Mo. banc 2012). Here, neither party suggests the March 2023 Judgment is a final judgment under Section 512.020(5), nor could they. The Spalittos' Amended Counterclaims remain pending, and therefore, the March 2023 Judgment cannot be deemed a final judgment. See Columbia Mut.

5

Ins. Co. v. Epstein, 200 S.W.3d 547, 549 (Mo. App. E.D. 2006) ("Generally, when considering finality of a judgment, if a counterclaim is pleaded, the trial court must make a finding that disposes of the counterclaim.").

However, Rule 74.01(b) "provides a limited exception [to Section 512.020(5)'s] finality requirement." First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc., 515 S.W.3d 219, 221 (Mo. banc 2017). When "more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved," Rule 74.01(b) authorizes the circuit court to enter judgment on one or more (but fewer than all) of the claims and certify that there is no just reason for delaying the appeal, thereby rendering that judgment a "final judgment." Rule 74.01(b); First Nat'l Bank of Dieterich, 515 S.W.3d at 221–22.

It is important to note that our Supreme Court "has never construed the phrase 'final judgment' in Section 512.020(5) so broadly as to allow certification under Rule 74.01(b) of every judgment resolving one or more (but fewer than all) the claims in a lawsuit," as doing so would have the impermissible effect of "mak[ing] 'judgment' and 'final judgment' synonymous, i.e., it would give no meaning to the word 'final' in the statute." Wilson, 600 S.W.3d at 768–69. Accordingly, not all judgments are eligible for certification under Rule 74.01(b). Where a judgment resolves one or more claims but leaves one or more claims unresolved, it is eligible for certification under Rule 74.01(b) *only if* it disposes of a "judicial unit" of claims. Id. (emphasis added). The Supreme Court of Missouri has provided two alternate methods for determining if a judgment disposes of a judicial unit. See id. at 768–72. Under the first method, a judicial unit is created when a judgment "disposes of all claims by or against one or more—but fewer than all—of the parties." Id. at 769. Such a judgment is considered "final" in that it "resolves all of the

6

claims in a lawsuit from the point of view of at least one party, even though other claims by or against other parties remain to be resolved." Id. The second method does not address the parties to the litigation and instead finds a judicial unit is disposed of when a judgment "resolves one or more claims that are *distinct* from those claims that remain to be resolved." Id. at 770. Claims are "distinct" where they do not arise from the same set of facts, transactions, or occurrences. Id.

Because determining whether these criteria are met is a question of law, the circuit court's designation of an order as a final judgment under Rule 74.01(b) is not conclusive; rather, the "content, substance, and effect of the order" is dispositive. Id. (citing Gibson, 952 S.W.2d at 244). Further, although determining whether to certify a qualifying judgment for appeal under Rule 74.01(b) is soundly within the trial court's discretion, the *preliminary* question of whether the judgment is *eligible to be certified* "is a question of law on which the circuit court has no discretion[.]" Wilson, 600 S.W.3d at 771.[4]

Here, the March 2023 Judgment was in fact a judgment because it resolved Appellants' one-count petition in its entirety, thereby fully resolving the rights of the parties as they pertain to claims made by Appellants. See Henderson, 566 S.W.3d at 598. However, because the Spalittos' Amended Counterclaims remain pending in the circuit court, we must consider whether the March 2023 Judgment disposed of a judicial unit, thereby becoming eligible for certification as "final" for purposes of appeal under Rule 74.01(b). See Wilson, 600 S.W.3d at 769–70.

---

[4] Inasmuch as Respondents urge us to apply a multifactor test to determine whether the trial court abused its discretion in certifying the appeal, we note that we must first address the threshold question of whether the judgment was *eligible* to be appealed. Where the judgment was not *eligible* to be appealed, we need not consider whether the trial court abused its discretion in doing so. See Maue v. Fiedler Acres Subdivision, 614 S.W.3d 601, 609 (Mo. App. E.D. 2020) (applying a multifactor test *only after* determining the judgment was *eligible* for Rule 74.01(b) certification); Crawford v. Distrib. Operations, Inc., 561 S.W.3d 463, 467 (Mo. App. E.D. 2018).

7

## I. The Circuit Court's Entry of Partial Summary Judgment Did Not Dispose of a Distinct Judicial Unit

### A. The March 2023 Judgment Did Not Dispose of All Claims Involving Appellants

A judgment satisfies the first alternate meaning of judicial unit as explained in Wilson when it resolves all legal issues from the point of view of one party. Id. at 769. Appellants maintain the March 2023 Judgment satisfies this first meaning because it fully resolved all the claims raised in Appellants' one-count petition. Appellants' argument rests on a misunderstanding of Missouri caselaw.

Appellants cite Butala v. Curators of University of Missouri, 620 S.W.3d 89 (Mo. banc 2021), in support of their position that the March 2023 Judgment was properly certified for appeal under Rule 74.01(b). But Appellants' reliance on Butala is misguided. In fact, a careful reading of Butala illustrates both the rule and the error of Appellants' argument. In Butala, patients brought suit against individual doctors *and* the university curators for various torts and statutory violations. 620 S.W.3d at 92. The circuit court entered judgment dismissing all of the curators from the case, so that the only pending claims were between the patients and doctors. Id. Because dismissing the curators resolved *all* legal issues in which they were implicated, whether claims raised by the curators or lodged against them, the circuit court's judgment disposed of a judicial unit under the first meaning. Id. at 94; see also Gibson, 952 S.W.2d at 245 (internal quotation omitted) ("When one [party], but not all [parties], is dismissed from a case, the trial court may designate its judgment as final for purposes of appeal."). Such facts are not before us as no parties have been dismissed from the action pending before the circuit court.

Indeed, Missouri courts have repeatedly found that the first method of determining a judicial unit as explained in Wilson is satisfied only when a judgment resolves *all* claims relating to a party, including pending claims filed *against them*. See Luebbering v. Varia, 637 S.W.3d

8

366, 371 (Mo. App. E.D. 2021) (finding a judgment that *completely dismissed* a party from the litigation disposed of a judicial unit); Cass Cnty. v. City of Lee's Summit, 638 S.W.3d 560, 565–66 (Mo. App. W.D. 2021) (finding a judgment dismissing a party who was *not implicated in the remaining pending claims* resolved a judicial unit); Bottorff-Arey v. Truman State Univ., 633 S.W.3d 508, 512 & n.5 (Mo. App. W.D. 2021) (finding a judgment dismissing two parties from the case disposed of a judicial unit where *pending claims concerned only other parties*).

Here, unlike the aforementioned cases, the March 2023 Judgment did not summarily dismiss Appellants from the entirety of the lawsuit. See Bannister v. Pulaski Fin. Corp., 255 S.W.3d 538, 542 (Mo. App. E.D. 2008) (emphasis added) ("Unlike the Gibson case, where the court dismissed all counts against one party, *no party in the instant case has been entirely discharged from the litigation*[.]"). Although the March 2023 Judgment resolved those claims *raised* by Appellants in their petition, Appellants remain parties to the Amended Counterclaims still pending before the circuit court. Appellants need only look to Wilson for clarity on this matter. In Wilson, a circuit court's order resolved the sole claim a party raised, but left unresolved those claims lodged against the party. Wilson, 600 S.W.3d at 733. Because the party remained implicated in the pending claims, the Supreme Court found the order did not dispose of a judicial unit and therefore was not eligible for Rule 74.01(b) certification. Id. The fundamental principles addressed in Wilson undermine Appellants' argument because Appellants remain a party to the pending Amended Counterclaims. Without question, the March 2023 Judgment did not resolve *all* claims implicating Appellants, and therefore did not dispose of a judicial unit. See Wilson, 600 S.W.3d at 769.

B.    The Claims Resolved by the March 2023 Judgment Are Not Distinct from the Claims Still Pending Against Appellants

9

Appellants argue that the March 2023 Judgment also disposed of a judicial unit under the second meaning discussed in Wilson because the claims resolved by the March 2023 Judgment are distinct from those claims that remain pending against them in circuit court. The Spalittos counter that the Amended Counterclaims are factually intertwined with the claim alleged in Appellants' petition, which was resolved by the March 2023 Judgment. The record before us clearly shows that the counterclaims still pending before the circuit court are based upon the same operative facts as the resolved claims, and therefore the March 2023 Judgment did not resolve a distinct judicial unit under the second alternate meaning discussed in Wilson. Id. at 770.

Because the "effect of Rule 74.01(b) is to permit severance of any *unrelated substantive claim* for relief," First Nat'l Bank of Dieterich, 515 S.W.3d at 222, a distinct judicial unit forms under the second meaning only where the unresolved claims arise out of differing, separate, or distinct transactions or occurrences. Ndegwa, 371 S.W.3d at 802; see also Flower Valley, LLC v. Zimmerman, 575 S.W.3d 497, 502 (Mo. App. E.D. 2019) (quoting Comm. for Educ. Equal. v. State, 878 S.W.2d 446, 451 (Mo. banc 1994)) ("Claims are considered separate and distinct 'if they require proof of different facts and the application of distinguishable law[.]'"). Distinctness may exist even when there is some connection between claims, such as when the pending claims rest on different legal theories and operative facts than the resolved claims. Wilson, 600 S.W.3d at 700–71; see also Comm. for Educ. Equal., 878 S.W.2d at 452.

To review, the March 2023 Judgment fully disposed of Appellant's one-count petition alleging breach of the Indentures. But the March 2023 Judgment stated that the Spalittos' seven amended counterclaims remained pending against Appellants. Appellants posit that the *only* unresolved counterclaims pending before the circuit court are Counts II and III, appearing to

10

argue that the March 2023 Judgment fully resolved Count I of the Amended Counterclaims by implication.[5] Missouri courts recognize that where a judgment, by implication, carries with it another finding, the implied finding will be sustained, even if it is not specifically mentioned. Bray v. Wells Fargo Home Mortg., Inc., 654 S.W.3d 732, 738 (Mo. App. E.D. 2022) (citing Jefferson v. Am. Fin. Grp., Inc., 163 S.W.3d 485, 487 n.2 (Mo. App. E.D. 2005)). We therefore first evaluate whether Count I of the Amended Counterclaims was, as Appellants suggest, implicitly resolved by the circuit court's grant of partial summary judgment.

In Count I, the Spalittos alleged that the Indentures do not restrict their use of the Lot and sought the following remedies: (a) declaratory judgment that no restrictions, indentures, or setback requirements limit or affect their Lot; (b) declaratory judgment that Mullen, Danker, and Oldfield are not trustees of Topping Estates; (c) declaratory judgment that Appellants are not entitled to indemnity from the lot owners and must personally reimburse the owners; (d) money damages and attorneys' fees incurred in the litigation; and (e) any other relief the circuit court deemed just and proper.

By finding that neither the Indentures nor the Build-line are valid or enforceable, the March 2023 Judgment addresses Count I's first remedial request. See id. However, we are not persuaded by Appellants' suggestion that this finding implicitly resolves *the entirety of Count I*. Although we agree that the judgment does address *part* of the claim made in Count I, "[a]ddressing or contending with a claim is not the same as *resolving* a claim, and the latter is necessary to create a judgment." Reynolds v. Berger, 649 S.W.3d 322, 327 (Mo. App. E.D. 2022). Moreover, it is well-established that where multiple forms of relief are sought with

---

[5] Appellants argue that Counts IV, V, VI, and VII of the Amended Counterclaims have also been implicitly decided by the March 2023 Judgment. We need not address Counts IV–VII to reach our holding, as our analysis of Counts I, II, and III is dispositive.

respect to one set of facts, an order that resolves some, but not all, prayers for relief does not fully resolve the claim. Wilson, 600 S.W.3d at 768 n.6; accord Comm. for Educ. Equal., 878 S.W.2d at 452 (clarifying that declaratory judgment is "but one of several remedies" that a party may seek for the assertion of a legal right, but is not, on its own, a substantive claim). The March 2023 Judgment does not address numerous factual findings and legal conclusions that the Spalittos expressly allege in Count I of their counterclaim, namely: that Mullen, Danker, and Oldfield are not valid trustees; that Appellants are not entitled to indemnity; and that the Spalittos are entitled to attorneys' fees or money damages. See id. We conclude that Count I of the Spalittos' counterclaim was not wholly resolved by implication and remains pending before the circuit court. See Bray, 654 S.W.3d at 738.

We next consider whether Count I and the other pending Amended Counterclaims arise out of the same transactions or occurrences as the claim resolved in the March 2023 Judgment. See Wilson, 600 S.W.3d at 770. In particular, we assess whether the circuit court's findings that the Indentures and Build-line are invalid and unenforceable with regard to the Lot rest on the same facts central to the matters pending in the Amended Counterclaims. If so, we must conclude that the March 2023 Judgment did not dispose of a distinct judicial unit. See id.

As discussed above, certain remedies in Amended Counterclaim Count I remain pending before the circuit court. See Berger, 649 S.W.3d at 327. The March 2023 Judgment implicitly granted the Spalittos' request for a declaratory judgment that the Topping Estates' Indentures did not bind their Lot. See Bray, 654 S.W.3d at 738. However, the circuit court made no findings or rulings regarding the request for damages incurred in litigation of the same. See Comm. for Educ. Equal., 878 S.W.2d at 452. The pending requests for damages and attorneys' fees inseparably overlap with the granted request to have the Indentures and Build-line declared

12

invalid and unenforceable. See Flower Valley, LLC, 575 S.W.3d at 503 (finding that an unresolved request for attorneys' fees incurred in litigating a particular claim does not arise out of a transaction separate from the underlying claim); see also Epstein, 200 S.W.3d at 551. We find unavailing Appellants' suggestion that the damages sought by the Spalittos in their counterclaims have an independent basis unrelated to the validity of the Indentures. The entirety of both the Appellants' initial claims and the Spalittos counterclaims are premised upon the Indentures. Accordingly, this request for relief is not part of a distinct or separate transaction but instead relies on the circuit court's finding that the restrictions were unenforceable. See Wilson, 600 S.W.3d at 768 n.6.

Turning to Count II of the Amended Counterclaim, which remains pending in the circuit court, the Spalittos allege slander of title. Specifically, the Spalittos claim that Appellants slandered them by filing a notice of indenture violation and the notice of *lis pendens* even though neither the Indentures nor Build-line were enforceable against the Lot. The Spalittos' claim for slander of title is wholly dependent upon the same operative facts underlying the March 2023 Judgment: that the filed notices falsely claimed that the Indenture restrictions and Build-line were enforceable. See First Nat'l Bank of Dieterich, 515 S.W.3d at 222–23 (finding that a **resolved** claim for declaratory judgment regarding payment owed for a property and a **pending** claim for slander of title regarding the property arose out of the same transaction, and therefore the circuit court's order did not dispose of a judicial unit). "To be sure, [declaratory judgment and slander of title] seek different legal remedies and the count for slander of title may even require evidence of the [Spalittos'] damages that would not be relevant to the declaratory judgment count[;]" however, both counts "clearly arise [] out of the same set of facts" and

13

therefore do not constitute a distinct judicial unit. See id. at 223 (quoting Gibson, 952 S.W.2d at 24–25).

Count III of the Amended Counterclaims, which also remains pending, alleges abuse of process resulting from Appellants' attempt to enforce void or invalid restrictions upon the Spalittos for an improper purpose. Success on this claim will likewise require the Spalittos to prove that the Indentures sought to be enforced by the alleged trustees were neither valid nor enforceable. See Energy Mkt. 709, LLC, 614 S.W.3d at 649 (finding a circuit court did not dispose of a distinct judicial unit where the order declared an ordinance was invalid and void but failed to resolve whether attempts to *enforce* that ordinance violated other constitutional rights).

We are not persuaded by Appellants' argument that none of the counterclaims currently pending in the circuit court relate to the validity of the Indentures. Rather, the record clearly supports a finding that the pending claims embodied within the Spalittos' Amended Counterclaims, like the claims resolved by the March 2023 Judgment, depend on whether the amendments to the Indentures were properly enacted and thus enforceable. See McClain v. Landmark Equity Grp., LLC, 584 S.W.3d 383, 388 (Mo. App. W.D. 2019) (holding no distinct judicial unit was formed where the resolved claim involved the propriety of a foreclosure sale of a property and the pending claims sought remedies related to the sale).

In summary, the validity of the Indentures, the direct interplay between those restrictions and the Lot, and the various methods for enforcing the Indentures are operative facts that run throughout both the March 2023 Judgment and the counterclaims that remain pending in the circuit court. See Wilson, 600 S.W.3d at 773. Because the pending Amended Counterclaims arise out of the same operative facts as those claims resolved in the March 2023 Judgment, we

14

hold that the March 2023 Judgment did not dispose of a distinct judicial unit under the second definition in <u>Wilson</u>. <u>See id.</u> at 770.[6]

Because the March 2023 Judgment did not resolve a distinct judicial unit under either definition proffered by our Supreme Court, it was not a final judgment eligible for certification under Rule 74.01(b). <u>See Wilson</u>, 600 S.W.3d at 771. Accordingly, we must dismiss the appeal. <u>See id.</u>

Conclusion

The appeal is dismissed for lack of jurisdiction.

KURT S. ODENWALD, Presiding Judge

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.

---

[6] Citing to <u>Wolfner v. Miller</u>, 711 S.W.2d 580 (Mo. App. E.D. 1986), Appellants maintain the March 2023 Judgment disposed of a distinct judicial unit. However, as the Spalittos remark, <u>Wolfner</u> was decided under Rule 81.06, a rule whose repeal went into effect over thirty years ago in 1988. Mo. R. Civ. P. 81.06 (repealed effective Jan. 1, 1988). Moreover, "Rule 81.06 was construed to give a trial court essentially unfettered discretion to decide if its orders were final and appealable[.]" <u>Comm. for Educ. Equal.</u>, 878 S.W.2d at 451. The adoption of Rule 74.01(b) occasioned a different approach to certifying orders for appeal. <u>Id.</u>; <u>see also Epstein</u>, 200 S.W.3d at 552 (reiterating that eligibility for appeal under Rule 74.01(b) requires finding "a distinct judicial unit," without regard to discretionary factors such as "judicial economy," "calculus as to the merits," or the "efficiency of rendering an appellate opinion"). Grounded in a rule that Missouri courts have long rejected, our analysis cannot end with <u>Wolfner</u>.

15